8949

FOLK v. SEABOARD AIR LINE RAILWAY.

(83 S. E. 452.)

RAILROADS. ACCIDENT AT CROSSING. FRIGHT OF ANIMAL. WILFULNESS. EVIDENCE. CONTRIBUTORY NEGLIGENCE. PLEADING. DAMAGES.

1. RAILROADS—ACCIDENTS AT CROSSING—"COLLISION."—Civil Code 1912, sec. 3230, making a railroad liable for a "collision" at a crossing in absence of statutory signals, unless plaintiff is guilty of gross negligence, is applicable, though there is no actual contact, as where a horse, frightened by a train backing without giving the statutory signals, ran up the track, injuring the occupants of the buggy.

2. NEGLIGENCE — WILFUL NEGLIGENCE — CONTRIBUTORY NEGLIGENCE AS DEFENSE.—Contributory negligence is no defense to wilful negligence.

3. RAILROADS—CROSSING ACCIDENT—EVIDENCE.—Evidence of failure to give the signals required from a railroad train by statute at public crossings is competent to support allegations of reckless negligence.

4. RAILROADS—ACCIDENT AT CROSSING—EVIDENCE.—In an action for injuries sustained in a runaway caused by the backing of a train without signals at a crossing, plaintiff is entitled to show the entire situation immediately preceding the injury, how the injury occurred, and what was the situation immediately after she was thrown out or got out of the buggy.

5. DAMAGES—PERSONAL INJURIES—FRIGHT—EVIDENCE.—In an action for injuries sustained in a runaway by a backing train at a crossing, evidence of the fright shown by plaintiff and worry she suffered in connection with her bodily injury was competent.

6. DAMAGES—PHYSICAL INJURIES—NERVOUS SYSTEM.—In an action for personal injuries the jury may consider in fixing damages plaintiff's mental anguish and worry, but only in connection with her physical injury and the injury to her nervous system.

Before GAGE, J., Bamberg, November, 1913.    Affirmed.

Action by Alma Folk against Seaboard Air Line Railway to recover damages for injuries received at a railroad crossing. From a judgment for plaintiff, defendant appeals. The pleadings, facts and the first exception to the charge to the jury are stated in the opinion of the Court. The charge on Circuit was as follows:

There are four main questions for you to decide in this case. Get the allegations first thoroughly in your minds, and I think you will have no trouble about understanding what I say to you.

It is contended by plaintiff's counsel that on the day in December, in question, of last year, about which the witnesses testified, a freight train was standing on the line of the Seaboard Air Line Railway, a short distance north of the town of Denmark; that the engine was facing down towards Denmark, and with the tail back up towards Columbia. Their contention is that Miss Folk was crossing that railroad track, on a public highway, going from her home towards the east, and as she got upon the track she saw upon the track the tail end of the car, and that as she was about to cross the track, the engineer operating that train of cars, at the other end of the line, applied the steam and backed suddenly, frightening the mule, and the mule ran up the track, going north and injuring the lady. Now, that is her contention.

FOOTNOTE.—As to duty of trainmen where animals are frightened by the train, but not struck by it, see note in 46 L. R. A. (N. S.) 430.

Now, ,the first question for you to decide is whose act brought about the trouble. The railroad contends, and I shall take that up first, because it lies just at the threshold of the case, the railroad contends that whatever happened, happened by reason of what the lady and her brother did. The railroad charges that the driver of the buggy was careless, was the careless one, and if that is so, if this act brought on the injury, he is liable and not the railroad company. I charge you this, that in order to defeat her right of action, in order to deprive her of the right to sue, the driver of the buggy must have been guilty of gross negligence, and gross negligence means what the words imply. I say that, because that is the statute law. If this thing occurred at a public crossing, that is, where a dirt highway crosses a railroad highway, in order to ·defeat the man in the buggy of his right, he must have been guilty of gross negligence about what he did. Gross negligence means something more than ordinary negligence. It means negligence in large degree. If you find out that the driver of that buggy was guilty of negligence in large degree, and that was the thing which · brought about the event, you find a verdict for the defendant. If you conclude that the driver of the buggy was not guilty of negligence, or at least guilty of gross negligence, then you go one step further and inquire whether or not the railroad was negligent. The word negligent means carelessness. Put yourselves right where these parties were at the critical place and time. The place here in controversy is where a public highway crosses a railroad highway, and at that point, at that crossing, in the very nature of the case, the right of both parties is locked. The railroad may not use its track at a crossing with the same liberty and freedom as it does everywhere, and a man in a vehicle may not use the highway at the crossing with the same freedom that he uses it elsewhere.

Well, now, what was the duty of the railroad company when it wants to go over the crossing, and by crossing I

Rep.]                April Term, 1914.

mean the exact spot where the dirt highway crosses the railroad highway; what is the duty of the man in charge of the freight train before he passes his cars over that crossing—you will inquire, where was the engineer, and you will inquire how long was the train; you will inquire who was on the back of the train next to the crossing. The statute law, passed by the legislature, exacts of the operators of trains the performance of certain acts before they may go over that crossing; one is, that they must give notice of their purpose to go over there by the ringing of a bell or the blowing of a whistle, so that persons in vehicles or on foot may have notice of their intent. Now, did the railroad servants, the engineers and flagman and conductors on that day—did they exercise ordinary care in backing the train over the crossing? That is the exact issue for the jury. If they did that that exonerates them and they have done no wrong. If they failed to do what they ought to have done, if they backed back suddenly with their cars over the crossing, without warning and without notice to those behind, and without looking for those behind, if in your judgment that was a failure to exercise ordinary care, that is what the law calls carelessness or negligence. If you find that fact, then you convict the railroad company of wrongdoing. If you convict the railroad of wrongdoing, then you go one step further. The plaintiff, Miss Folk, contends that the railroad was not only guilty of negligence, but was guilty of recklessness. Negligence is one thing and recklessness is another, and each one speaks for itself. Words are used to express ideas, and if I go and explain words which are self-explanatory, there is danger of my confusing you.

Well, now, come to the matter of recklessness. That means what the words imply. If you see a man driving a buggy through a street, he might drive it with so little care you would say that he is a negligent man, or he might drive it with so great a lack of care that you would say that is a reckless man. The two words are different. One shades

off the other, and it is not always easy to discern the difference between the two. You know what a careless, and what a reckless man is.

Miss Folk's contention is that these conductors and engineers and flagman, on that day, were not only careless in backing that car, but were reckless. That is a matter for the jury. It is sometimes called wilfulness. It all means the same thing. It indicates that condition of mind, or purpose, which has no regard for the rights of other people. Miss Folk contends that the railroad was reckless, and she must prove it by a preponderance of the testimony, that is, she must satisfy you that what the railroad did on that day was a wilful or reckless act. Well, now, why am I charging you the difference between carelessness and recklessness— for this reason, when you come to consider a careless act, she is entitled to recover actual damages, and when you consider a reckless act, she is entitled to recover what is called punitive damages. In the one case she is entitled to be compensated for the injury done, and in the other case, she is entitled to punish the railroad by giving smart money.

If a man runs against you in the street and breaks your buggy, and it costs you five dollars to replace it, your actual damage is five dollars, and he must pay you five dollars to mend that wheel. But if he runs against you on purpose. for meanness, you are entitled to, have him pay you for that recklessness whatever the jury assesses. That is the difference.

This lady claims that she is entitled to so much money as actual damages, and that means what the words imply. She claims that she was injured in the body. You heard her testimony, and heard the testimony of her sister. Now, the jury cannot, with the exactness of an apothecary, measure the damage to a person. If a man breaks your buggy wheel and it costs five dollars, you know what the damage is. If he breaks your leg, he is entitled to pay you for that, but how are you going to find out in dollars and

cents what the value of a broken limb is? You have to do it because there is no other way to do it. The same way with this lady. You cannot weigh exactly in dollars and cents how much she is damaged, because you don't know, but you can do the best you can. And that is all that a jury can do in any case. You must do the best you can towards fixing in dollars and cents the actual damages done to her body. She sues not only for actual damages, but she claims that that indefinable thing called the nervous system has been injured—that she is made nervous. You have heard doctors talk about those things, and you know something about them, and if you are able to do so you must compensate her for that injury, too, because the nerves are a part of the body, like the bones and skin, and if that undiscernible and indefinable thing called the nervous system has been injured by what the mule did on that day, she is entitled to be compensated for that. That is a part of her actual damages, and she claims in addition to that that she has suffered what is called worry of mind, mental anguish. If she suffered in her body, and suffered mental anguish—not a simple fright, but mental anguish, serious trouble of the mind, and suffered by reason of the extraordinary circumstances brought on by the wrongful act of the railroad company. If the circumstances were extraordinary, she is entitled to be compensated. On the other side, she wants you to add to that whatever you assess against the railroad for smart money, for punitive damages, if you conclude that the act of the railroad servants on that day was reckless.

The second, third, fourth and fifth exceptions were as follows:

II. Because his Honor should have charged defendant's third request, as follows:

"3. The complaint alleges that upon approaching the track plaintiff and her brother, who was driving, stopped,

looked and listened for the approach of the train. The answer puts this in issue, and if the plaintiff did not exercise slight care to avoid the danger, such as a person of ordinary care and prudence would have exercised, under similar circumstances, and such failure contributed to her injury, as a proximate cause thereof, without which it would not have occurred, then she cannot recover, because of the negligence of defendant, if any."

The error being that this was a correct proposition of law on the pleadings and testimony and defendant was entitled to the defense of contributory negligence to the extent presented by this defense, which it did not otherwise secure.

III. Because his Honor erred in refusing defendant's motion to strike from the second paragraph of the complaint the following portion:

"That even after the said mule was stopped the plaintiff was still in great fear and dread because the passenger train going north was about due, and the plaintiff feared they would not be able to get out of the excavation and off of the track before said train passed."

The error being that this portion alleged fear and dread suffered by plaintiff and the complaint contained no allegation that such fear or dread resulted in bodily injury and the same was, therefore, not a legal element of damage.

IV. Because his Honor allowed plaintiff to testify as follows, over defendant's objection:

"Q. State whether or not, while you were standing there, you saw or knew anything, of the time of the passenger train coming north being due?

"Mr. Lyles: We object to that line of testimony, on the ground that it is irrelevant and incompetent, and more particularly because it is a statement of the mental condition, not connected with the injury.

"Q. State whether or not you saw anything that indicated that the passenger train was due? A. I saw the smoke down the track.

"Q. State whether or not you were afraid? A. I could not have—I came to my senses—I do not know whether I was thrown out, but the first thing I knew I was standing on the main line track, looking down towards Denmark, and I saw the smoke of a train.

"Q. State whether or not you realized at that time that the passenger train that was coming north was about due? A. It was due, and it was time for it, at the time, and I was afraid that we could not get off the track.

"Mr. Lyles: We renew our objection to that line of testimony, and further, because her own testimony shows the other train to be down at the station or below the station.

"The Court: Note the exception and go ahead."

The error being that fear, dread, and mental distress, so testified to, was not competent as an·element of damage in absence of proof showing that such fear, etc., resulted in or was connected with bodily injury.

V. Because his Honor erred in charging the jury as follows:

"That is a part of her actual damages, and she claims in addition to that that she has suffered what is called worry of mind, mental anguish. If she suffered in her body, and suffered mental anguish—not a simple fright, but mental anguish, serious trouble of the mind, and suffered by reason of the extraordinary circumstances brought on by the wrongful act of the railroad company, if the circumstances were. extraordinary, she is entitled to be compensated."

The error being that the jury were thereby instructed that they could allow damages for worry of mind or mental anguish standing alone, and even though such worry of mind or mental anguish did not result in or was disconnected with any bodily injury, contrary to the rule that fright, fear, mental distress, worry of mind or mental anguish are not elements of damage when disconnected with, or not resulting in, bodily injury.

*Messrs. Mayfield & Free* and *Lyles & Lyles,* for appel-
lant, submit: *Burden of plaintiff to prove defendant's neg-
ligence the proximate cause of the injuries:* 62 S. C. 130,
141. *Under general denial defendant entitled to show the
cause of injury was either plaintiff's own act,* 59 S. C. 535,
*or the act of some one for whom defendant was not respon-
sible,* 51 S. C. 79; Civil Code, 1912, sec. 3230, *only applies
where there is an actual collision;* Civil Code, sec. 3222,
*imposes no restrictions on right to plead contributory negli-
gence:* 87 S. C. 324. *Charge required plaintiff's negligence
to be entire cause of injury to bar recovery:* 56 S. C. 95.
*Issue as to contributory negligence in this case was raised by
general denial in answer:* 50 S. C. 49; 66 S. C. 135, 140; 68
S. C. 512, 514; 73 S. C. 503, 511; 76 S. C. 452, 458; 82
S. C. 565, 568. *Plaintiff's conduct showed gross negli-
gence:* 94 S. C. 143. *Damages not recoverable for mental
anguish unconnected with bodily injury:* 52 S. C. 323.
*Testimony as to fright and mental anguish speculative:*
81 S. C. 31; 78 S. C. 556. *Allegations of complaint should
have been stricken out:* 91 S. C. 417.

*Messrs. Carter & Carter* and *R. C. Hardwick,* for
respondents: *Any error in charge as to punitive damages
was harmless, as jury found the injury occasioned by
defendant's wilfulness:* 60 S. C. 67; 64 S. C. 491; 73 S. C.
467; 16 L. R. A. 639; 78 S. C. 549.

September 28, 1914.

The opinion of the Court was delivered by MR. JUSTICE
WATTS.

This was an action for actual and punitive damages for
alleged personal injuries to the plaintiff, caused by alleged
negligent, reckless, wilful and wanton acts of the defendant
at a public crossing, just outside the corporate limits of
the town of Denmark, in the county of Bamberg, where the
public highway crosses the defendant's line of railroad.

The plaintiff alleges in her complaint that on December 26, 1912, she was in a buggy drawn by a mule and driven by her brother going from her home in Bamberg county to the town of Denmark; that it was necessary to cross defendant's railroad track at a public crossing, just outside the corporate limits of the town of Denmark, at which point the public highway passed over three railroad tracks belonging to the defendant in a deep cut; that when they reached the cut they looked and listened and did not hear or see any train and then started to drive across the track; that when they got into the cut and had about reached the first track they discovered the rear end of a freight train which was then standing still, but immediately started backing up towards the crossing, without giving any warning or statutory signals, very suddenly, speedily and with great force and noise, all of which, together with the close proximity of the train, caused the mule to become frightened and run up the railroad track, and the plaintiff was jolted and thrown against the buggy, causing her to receive bodily injuries, and become badly frightened and her nervous system permanently impaired.

The specific acts of negligence alleged were: A failure to give the signals required by the statute law; a failure to have a brakeman on the rear of the train; a failure to have a flagman near the rear of the train, and moving the train on the crossing without warning when plaintiff was attempting to cross in open and plain view of defendant's employees. The cause was tried before his Honor, Judge Gage, and a jury, at the November term of the Court, 1913, for Bamberg county, and resulted in a verdict for the plaintiff for one thousand dollars actual damages and seven hundred and fifty dollars punitive damages. After entry of judgment, defendant appeals.

The defendant's first exception is: I. Because his Honor erred in charging the jury as follows: "Now, the first question for you to decide is whose act brought about the

trouble. The railroad contends, and I shall take that up first, because it lies just at the threshold of the case, the railroad contends that whatever happened, happened by reason of what the lady and her brother did. The railroad charges that the driver of the buggy was careless—was the careless one—and if that is so, if his act brought on the injury, he is liable and not the railroad company. I charge you this, that in order to defeat her right of action, in order to deprive her of the right to sue, the driver of the buggy must have been guilty of gross negligence, and gross negligence means what the words imply. I say that because that is the statute law. If this thing occurred at a public crossing—that is, where a dirt highway crosses a railroad highway—in order to defeat the man in the buggy of his right he must have been guilty of gross negligence about what he did. Gross negligence means something more than ordinary negligence. It means negligence in large degree. If you find out that the driver of the buggy was guilty of negligence in large degree, and that was the thing which brought about the event, you find a verdict for the defendant. If you conclude that the driver of the buggy was not guilty of negligence, or at least guilty of gross negligence, then you go one step further and inquire whether or not the railroad was negligent."

The error being:

(a) His Honor was here submitting the issue of causation raised by defendant's denial, to wit, was the trouble caused by defendant or by plaintiff, or her brother, the driver of the buggy? And it was error to instruct the jury that defendant was liable if the trouble was caused by the simple negligence of plaintiff or her brother, driving the mule, when the correct rule is that defendant was not liable if the trouble was caused by the simple negligence, or even blameless act, of plaintiff, her brother, or any one else.

(b) If his Honor was here submitting the issue of contributory negligence, the charge was erroneous, because it

required defendant to prove a greater degree of contributory negligence than mere ordinary negligence, when there was no collision, and section 3230, Civil Code of 1912, volume I, did not apply.

(c) If his Honor was here submitting the issue of contributory negligence, it was error, because he required such contributory negligence to be the entire cause, when such negligence bars recovery, when it is one of the direct and proximate causes.

This exception is based on the presumption that section 3230, Civil Code of 1912, vol. I, is not applicable to the facts of this case. We do not think that it is necessary in order to invoke the benefit of this section of the statute, that the person should be actually struck by the train and collide with it. If a person is injured by failure to give the signals required by law which has been held to be negligence, *per se,* and the failure to do so is the primary moving and controlling cause, or the direct and proximate cause, of the injury, then the railroad would be liable. If the plaintiff was attempting to cross the railroad at a public crossing, and the failure of the defendant to give the signals as required by law caused the animal to become frightened and to run away and inflict bodily injury on the plaintiff, and the prime moving and controlling cause of the animal's fright, which resulted in the runaway and injury to the plaintiff, was the failure to give the required signals, then it would not matter whether she was injured by being actually struck by the train or injured at the crossing, because the cause of her injury would be the failure of defendant to comply with the law as to the crossing in giving required signals, and while the person was not actually injured at the crossing, yet the prime inception cause started at the crossing and continued from there until completed somewhere else.

If the animal became frightened at the crossing and ran from there until plaintiff was injured, then it can be said

that the controlling cause of her injury was at the crossing. She would not have been injured unless the mule ran away. The mule would not have run away unless he became frightened at the crossing, and the cause of his fright can be inferred from the movement of the cars without giving the required signals. Here the inception of the trouble whereby plaintiff was injured commenced at the crossing and continued without any independent intervening cause until her injury actually occurred. We are not disposed to refine and hairsplit so as to nullify these wise provisions of the statute intended to safeguard the traveling public where a highway crosses a railroad, and to hold that the person must be actually injured at the crossing or be in collision with the train. It is sufficient if the negligence of the railroad at the crossing by its failure to comply with the law inaugurated and created a condition which resulted in injury to a person, as the direct and proximate cause of the injury. The evidence in this case shows that the mule was on the track and made a sudden jump and ran down the track; that the car came within a few feet of the mule. If the mule had not acted as it did there is every reason to believe that the plaintiff in all probability would have been killed. The jury found that the defendant was guilty of wilful negligence at the time of the occurrence, and even if there had been evidence of contributory negligence on the part of the brother of the plaintiff, the charge of his Honor could not have affected the verdict, or been prejudicial to the defendant, as contributory negligence is no defense to a wilful tort, and the jury by their findings have established wilfulness. There was evidence that the defendant failed to give the signals required by law when approaching a public crossing and moved its train when standing still without giving the signals required by law and did not have a proper lookout as the circumstances of the case required. All these questions were for the jury.

Evidence of failure to give the signals required by statute at public crossings near the accident is competent to support allegation of reckless negligence, and shows 3 an utter disregard of the requirements of law as to manner of running trains. *Mack* v. *Railroad Co.,* 52 S. C. 329, 29 S. E. 905, 40 L. R. A. 679.

If a person be on a public crossing across a railroad track in a town where a gate is kept which is up, and the train approaches without giving statutory signals and he in order to avoid a collision drives down the track, or from 1 fright from letting down the gate the horse runs down the track and is overtaken and injured away from the crossing the railroad is liable as if the accident happened on the crossing. *Bishop* v. *Ry.,* 63 S. C. 532, 41 S. E. 808.

This exception is overruled.

The second exception is overruled. The defendant did not set up in its answer the defense of contributory negligence, and the plaintiff did not allege in her complaint that she was without negligence, and there was an allega-2-4 tion in the complaint charging defendant with wantonness and wilfulness, and contributory negligence is no defense to wilful and wanton tort; and the jury found there was wantonness and wilfulness and awarded exemplary damages, and defendant cannot complain that his Honor's charge was prejudicial to it.

Exception three is not well taken and is overruled.

Exception four is overruled. The plaintiff had the right to show entire situation immediately preceding the injury, how the injury occurred, and what was the situation after she was thrown out, or got out, of the buggy, and 4, 5 the fright shown and worry she suffered in connection with her bodily injury, her testimony was competent to show the entire situation, and we do not think his Honor committed any prejudicial error in not excluding the evidence.

The fifth exception, which complains of error on the part of the Judge on the question of damages, is not well founded. Take the charge as a whole, it will be seen that the jury could not conclude that the plaintiff could recover for mental anguish in the absence of bodily injury, but they were plainly informed that it must be based upon, and taken in connection with, bodily injury and suffering in her body. If her mental anguish and worry, was brought about by her physical injury and her nervous system torn up and upset or wrecked by her physical injury, then the jury could take that into consideration in estimating her damages, and we see no error on the part of his Honor in his charge to the jury, taking it as a whole.

Judgment affirmed.

MR. JUSTICE FRASER, *concurring.* I concur in the result. It seems to me that in order to destroy the defense of contributory negligence there must be "a *collision* with the engine or cars." But, in order that the defense of contributory negligence shall be available it must be pleaded. Here it was not pleaded. The practical effect is the same, whether it was eliminated by the statute or the proceedings. I, therefore, concur in the result.

MR. JUSTICE HYDRICK concurs in result.

MR. JUSTICE GAGE having, when Circuit Judge, tried the case below, was disqualified and did not sit on the hearing of this appeal.